**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**MARK ANTHONY HOLSOMBACH**  PLAINTIFF
**ADC # 134723**

V.  NO. 2:08CV00022-JMM-BD

**LARRY NORRIS, et al.**  DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**I.  Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Court Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date you receive the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the proposed findings and recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose

before the United States District Judge, you must, at the same time you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## II.     Introduction:

On February 14, 2008, Plaintiff, who is currently confined to the Varner Super Max Unit of the Arkansas Department of Correction ("ADC"), commenced this pro se action while he was confined at the ADC's Cummins Unit (docket entry #2). In his Complaint, Plaintiff alleges that the ADC's Grooming Policy, ADC Directive 98-04, substantially interferes with his right to free exercise of religion under the First

Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). In addition, Plaintiff claims that while he was confined at the East Arkansas Regional Unit ("EARU") of the ADC, Defendants Norris, Harmon, and Bell substantially interfered with his right to free exercise of religion under the First Amendment and RLUIPA by failing to maintain a Kosher kitchen and provide Plaintiff a Kosher diet. Plaintiff requests monetary damages and injunctive relief.

On October 16, 2008, Defendants Larry Norris, Greg Harmon, and James Bell filed a Motion for Summary Judgment (#36). In the Motion, Defendants contend that: (1) Plaintiff failed to exhaust his claim that the ADC grooming policy violates his rights under the First Amendment and RLUIPA, as required by the PLRA; (2) Plaintiff cannot establish that the ADC grooming policy violates his free exercise rights under either the First Amendment or RLUIPA, as a matter of law; (3) Plaintiff cannot establish that Defendants violated his free exercise rights under the First Amendment or RLUIPA for the alleged failure to maintain a Kosher kitchen and provide Plaintiff a Kosher diet, as a matter of law; (4) Defendants are entitled to sovereign immunity; (5) Defendants are entitled to qualified immunity; and (6) respondeat superior does not apply to § 1983 actions.

The Court conducted an evidentiary hearing in this matter on January 15, 2009. Plaintiff appeared pro se and testified. He also called as witnesses ADC inmates Truitte

Litsch and Randal Stormes. Defendants appeared through counsel, and each Defendant testified.

Based upon the pleadings and evidence presented, the Defendants' Motion for Summary Judgment (#36) should be GRANTED.[1]

## III.  Discussion:

A.  *Summary Judgment Standard*

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'"(quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party

---

[1] Because the Court finds that Plaintiff's free exercise claims fail as a matter of law, it is not necessary to address the issues of sovereign immunity, qualified immunity, or respondeat superior in this Recommendation.

will bear the burden of proof at trial, summary judgment should be granted.  See *Celotex,* 477 U.S. at 322.  "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions."  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

      B.    *Exhaustion*

Defendants first argue that Plaintiff failed to exhaust his claim that the ADC grooming policy violates his rights under both the First Amendment and RLUIPA as required by the PLRA.

The PLRA requires administrative exhaustion prior to the commencement of a lawsuit challenging prison conditions. "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained").  The Supreme Court has explained, however, that failure to exhaust is an "affirmative defense" under the PLRA and that "inmates are not required to specifically plead or demonstrate exhaustion in their complaints."  *Jones v. Block*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007).

Here, Defendants argue that Plaintiff failed to appeal any of his grievances regarding his complaints about the ADC grooming policy, and therefore failed to fully

exhaust his administrative remedies. However, Plaintiff stated in the attachments to his original Complaint that several of his grievances "never came back from the Warden" (#2 at p.62). In addition, at the evidentiary hearing, Plaintiff testified that he was unable to fully exhaust his administrative remedies regarding his complaints about the ADC grooming policy because he was never provided an "original copy" of the Warden/Center Supervisor's Decision Form.

Based upon Plaintiff's testimony, as well as Defendant Harmon's testimony, an inmate must have the original copy of the Warden/Center Supervisor's Decision Form to appeal the decision to the Chief Deputy/Deputy/Assistant Director.[2] Here, Plaintiff claims that he was provided only photo copies of the Decision Forms and, therefore, could not appeal those decisions. The Court finds that Plaintiff has created a genuine question of material fact on this issue.

An inmate plaintiff cannot be barred from suit if he is prevented from exhausting his administrative remedies. See *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (inmate's failure to exhaust his administrative remedies was not a bar to suit because prison officials prevented him from exhausting his administrative remedies). Here, Plaintiff has created a genuine issue as to whether he was prevented from appealing the decisions. There was no evidence offered by Defendants from which the Court could

---

[2] The ADC Grievance Procedure attached to Defendants' Motion for Summary Judgment provides that the appeal from the Warden "should be written in the space provided on the original Warden/Center Supervisor's Decision Form" (#36-7 at p.8).

6

conclude that Plaintiff was provided with the original documents that were required to perfect an appeal and exhaust his administrative remedies. It is undisputed that if Plaintiff was not provided the original copy of the necessary Decision Form, he could not have appealed his grievances further. As a result, Defendants are not entitled to summary judgment on this basis.

  C. *ADC Directive 98-04*

The ADC grooming policy contained in ADC Directive 98-04 requires that male inmates keep their hair cut above their ears. A separate provision prevents males from wearing facial hair, other than a neatly trimmed mustache. See *Fegans v. Norris*, 537 F.3d 897, 900-901 (8th Cir. 2008).[3] Plaintiff, a Messianic Hebrew, claims that the grooming policy violates his right to free exercise under both the First Amendment and RLUIPA. Plaintiff testified that, according to the tenants of his religion, he may only "pole" his hair once yearly, and he is allowed to cut his beard only during a time of illness.

The First Amendment provides that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). A prison regulation is valid under the First Amendment, even if it restricts an inmate's constitutional rights, if it is "reasonably related to legitimate penological interests." *Murphy v. Mo. Dep't of Corr.*,

---

  [3] The Court notes that ADC Directive 98-04 was not introduced into evidence in this matter. Defendant Norris testified, however, that there is an exception for inmates with medical conditions that are worsened by daily shaving.

372 F.3d 979, 982 (8th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts evaluating First Amendment claims must first consider whether the challenged governmental action infringes upon a sincerely held religious belief. *Murphy*, 372 F.3d at 983. If the belief is sincerely held, the court must apply a reasonableness test "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

While a rational-basis test applies to Plaintiff's constitutional claim, strict scrutiny applies to his claim under RLUIPA, 42 U.S.C. §§ 2000cc *et seq*. RLUIPA prohibits the government from imposing a substantial burden on the religious exercises of an inmate, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person is: (1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that compelling interest. 42 U.S.C. § 2000cc-1 (2007). A government regulation is a "substantial burden" when it significantly inhibits or constrains conduct or expression that manifests some central tenet of a person's individual religious beliefs, meaningfully curtails a person's ability to express adherence to a faith, or denies a person reasonable opportunities to engage in religious activities cardinal to a person's religion. *Murphy*, 372 F.3d at 988. Courts must "[a]ccord great deference to the judgment and expertise of prison officials, 'particularly with respect to decisions that implicate institutional

security.'" *Id.* at 983 (quoting *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004)).  The court will evaluate Plaintiff's claims under the stricter RLUIPA standard.

The United States Court of Appeals for the Eighth Circuit previously has held that hair length regulations are constitutional.  *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996).  In addition, in *Arnold v. Norris*, 283 Fed. Appx. 417 (8th Cir. July 8, 2008) (unpub.)(per curiam), the Eighth Circuit upheld the District Court's ruling that the ADC's hair length restrictions were valid under RLUIPA, despite their conflict with the inmate's religious beliefs.  In *Arnold*, this District Court held that the ADC grooming policy requirements were "supported by legitimate penological concerns" and were the least restrictive alternatives available to accomplish the ADC's compelling interests.  *Arnold v. Norris*, No. 1:06cv00029 HDY, slip. op at 4 (E.D. Ark. January 8, 2007).

The Eighth Circuit Court of Appeals recently addressed the constitutionality of the ADC grooming policy in *Fegans v. Norris*, *supra*.  In *Fegans*, the Court held that the ADC had a compelling interest in both safety and security to justify implementing the grooming policy at issue in this case.  Further, the Court– specifically relying upon the testimony of Larry Norris– held that the policy was the least restrictive means available to further those interests and concluded that the policy did not violate either the First Amendment or RLUIPA.

At the evidentiary hearing conducted in this matter, Defendant Norris testified that the grooming policy at issue was implemented to prevent inmates from being able to alter

their appearance in the event of escape and to prevent inmates from hiding contraband, including weapons, in their hair or beards. Defendant Norris also noted that inmates' hygiene was a consideration for the implementation of the grooming policy.

Defendant Norris testified that the ADC grooming policy allows female inmates to have longer hair, but he explained that female inmates are not as likely to engage in violent behavior as their male counterparts, nor are they as likely to conceal contraband. Defendant Norris stated that while weapons are found almost every day in the ADC's male units, weapons are rarely found in the women's units.

Here, Defendants do not challenge the sincerity of Plaintiff's religious beliefs. Rather, they assert that the ADC grooming policy is the least restrictive means to achieve the compelling government interest of prison safety.

Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline" when reviewing a regulation under RLUIPA's compelling interest standard. *Fegans*, 537 F.3d at 901. "Prison safety and security are compelling government interests." *Singson v. Norris*, No. 08-1570, __ F.3rd __, 2009 WL 173229, *2 (8th Cir. 2009). "RLUIPA does not elevate accommodation of religious observances over an institution's need to maintain order and security." *Id*. (internal quotations omitted). "A prison is free to deny inmate religious requests predicated on RLUIPA if they jeopardize the effective functioning of an institution." *Id*. (internal quotations omitted).

Based upon Defendant Norris's testimony at the evidentiary hearing in this matter, as well as the established law in this Circuit, the Court concludes that, while the ADC grooming policy conflicts with Plaintiff's sincerely held religious beliefs, it does not violate his free exercise rights under either the First Amendment or RLUIPA. See also *Newingham et al. v. Magness et al.*, No. 5:06CV00275 WRW, slip. op., 2007 WL 748372 (E.D. Ark. March 18, 2008) (dismissing Plaintiffs' claims that the ADC grooming policy violated their free exercise rights and RLUIPA because the policy was the least restrictive alternative available to accomplish compelling security concerns). As a result, Defendants are entitled to summary judgment on this claim.

D.   *Kosher Kitchen and Kosher Diet*

Plaintiff also claims that while he was confined at the EARU, Defendants Norris, Harmon, and Bell substantially interfered with his right to free exercise of religion under the First Amendment and RLUIPA by failing to maintain a Kosher kitchen and provide Plaintiff a Kosher diet. The Court will address these claims separately.

1.   Kosher Kitchen

According to Plaintiff's Complaint and his testimony at the evidentiary hearing, Defendants failed to maintain a strictly Kosher kitchen at the EARU. Specifically, Plaintiff alleges that Kosher food trays and main-line food trays are washed together, and that pork is cooked in the same kitchen where Kosher meals are prepared. At the hearing, Plaintiff testified that he also had heard that inmates regularly use utensils from the main

food line to steal peanut butter from the Kosher kitchen, thereby contaminating the tins of Kosher peanut butter. Importantly, Plaintiff testified that he had never been inside the EARU Kosher kitchen. Because Plaintiff lacked personal knowledge of the workings of the Kosher kitchen, Plaintiff called ADC inmates Truitte Litsch and Randal Stormes to testify on his behalf.

Inmate Litsch worked in the EARU Kosher kitchen between 2004 and 2006. Mr. Litsch stated that main-line kitchen staff sometimes entered the Kosher kitchen wearing aprons "contaminated" with animal blood. He also testified that items such as peanut butter were often stolen from the Kosher kitchen, and that the thieving inmates often dipped non-Kosher utensils into the tins of otherwise Kosher peanut butter.

Inmate Stormes worked in the EARU kitchen during 2006. Mr. Stormes testified that main-line food items sometimes were placed on Kosher trays, and that main-line kitchen staff entered the Kosher kitchen on many occasions. Mr. Stormes also stated that inmates often engaged in inappropriate behavior in the Kosher kitchen that contaminated the Kosher kitchen.

Defendant Bell, as food services manager for the EARU, also testified on this issue. Defendant Bell explained that there is a policy in place at the EARU to maintain a separate Kosher kitchen. Inmate staff members are instructed to keep main-line food and utensils separate from the Kosher kitchen. Kosher meals are not cooked in the same pots, or served with the same utensils, as main-line meals. Kosher food trays are different colors

12

from the main-line food trays and are never washed with main-line food trays.  Further, a supervisor is positioned in the kitchen to maintain the division between the main-line kitchen and the Kosher kitchen.  While Defendant Bell acknowledged that inmates often steal items from the Kosher kitchen, he also testified that those inmates are reprimanded for their misconduct and may be dismissed from working in the kitchen.

Based upon the evidence presented, the Court concludes that Defendants are entitled to summary judgment on this claim.  ADC officials have taken reasonable measures to maintain a Kosher kitchen at the EARU.  Further, it appears that Defendants employ reasonable measures to maintain a division between the main-line food preparation and Kosher food preparation.  Although Plaintiff has presented evidence that inmates sometimes deviate from this policy, Defendant Bell testified that these inmates are punished if they engage in such behavior.  The ADC is required to maintain a Kosher kitchen.  Defendants cannot be held, however, to an absolute standard.  They must take reasonable measures, but are not liable for random incidents of misconduct by inmates.

Accordingly, Plaintiff has failed to establish that Defendants have imposed a substantial burden on his religious exercises so as to create a genuine issue of material fact on this issue.  See *Murphy*, 372 F.3d at 988 (under RLUIPA plaintiff inmate must "show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion").

    2.    Kosher Diet

Plaintiff also complains that: (1) Defendants do not know how to categorize Kosher foods; (2) Kosher foods are not labeled properly; and (3) Defendants do not prepare Kosher food in the proper manner. Plaintiff introduced twenty-two food labels at the evidentiary hearing in this matter. Inmate Stormes testified that he provided these labels to Plaintiff and that they were removed from food items in the EARU Kosher kitchen. Although Plaintiff testified that most of the food items at issue were Kosher, he also questioned whether items such as powdered eggs and grits were Kosher because the labels (or portions of labels) inmate Stormes provided lacked Kosher labels. Further, although Plaintiff acknowledged that the bread that is provided at the EARU is Kosher, he complained that it was "festival bread" that should not be served on a daily basis. Plaintiff has failed to create a material question of genuine fact on this issue.

First, Plaintiff's belief that Defendants do not know how to categorize or label Kosher food is unfounded. Plaintiff testified that he is familiar with several of the symbols used to identify Kosher foods, but that he does not know all of the Kosher symbols. Further, Plaintiff had no direct knowledge as to how Kosher food items were prepared at the EARU and could not provide a cogent explanation as to why he believed the grits, for example, were not Kosher, except that the partial label inmate Stormes gave him lacked a designation that he recognized as indicating that the grits were Kosher.

By contrast, Defendant Bell testified that he has received training to determine whether a particular item should be categorized as Kosher, and that he personally inspects the food delivered to the EARU kitchen on a weekly basis to determine whether the food is properly categorized. Plaintiff failed to present any evidence to the contrary.

Finally, Plaintiff's complaint that he was provided "festival bread" on a daily basis while housed at the EARU fails to provide any support for his free exercise claims. If anything, such evidence strengthens the Defendants' argument that they made reasonable efforts to ensure that inmates requesting a Kosher diet were provided Kosher food.

The heart of Plaintiff's complaint seems to be that the Kosher food now being served at the ADC is unappetizing and that the ADC Defendants have begun to serve unpalatable Kosher meals to discourage inmates from requesting the Kosher diet. Unfortunately for Plaintiff, these claims are not at issue in this lawsuit. Based upon the evidence presented, Plaintiff has failed to create a genuine question of material fact with regard to his complaints about the EARU Kosher diet. Because Plaintiff has failed to establish that Defendants' conduct imposed a substantial burden on his religious exercise, Defendants are entitled to summary judgment on this claim.[4]

---

[4] The Court notes that Plaintiff acknowledged that he was provided a Kosher diet for the nearly two years he was housed at the EARU in the grievances he submitted while housed at the Varner Super Max Unit of the ADC (#36-5 and #36-6).

## IV.    Conclusion:

The Court recommends that Defendants' Motion for Summary Judgment (#36) be GRANTED and that Plaintiff's claims be DISMISSED with prejudice.

DATED this 30th day of January, 2009.

_____
UNITED STATES MAGISTRATE JUDGE